IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OSCAR CHICAS LOVO, | ) |
| Plaintiff, | ) |
| v. | ) 1:22CV1008 |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Dismiss or in the Alternative Motion for Summary Judgment, (ECF No. 8), filed by Defendant United States of America ("Defendant"). Plaintiff Oscar Chicas Lovo ("Plaintiff"), a foreign national, brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, based on an encounter with Immigration and Customs Enforcement ("ICE"), at which time ICE officers arrested and detained him. (ECF No. 1 ¶¶ 1–3, 4.) Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim or in the alternative for summary judgment pursuant to Rule 56. (ECF No. 8 at 1.) For the reasons stated herein, Defendant's motion to dismiss will be granted.

## I. BACKGROUND[1]

The following allegations are taken from Plaintiff's Complaint, (ECF No. 1), unless otherwise specified. Plaintiff is approximately 57-year-old and is a citizen of El Salvador who resides in Siler City, North Carolina. (ECF No. 1 ¶ 9.) Plaintiff migrated to the United States in 2000. (*Id.* ¶ 11.) Plaintiff was granted Temporary Protected Status ("TPS") on June 28, 2001, by the United States Government and continued to have TPS at the time he was detained by ICE officers on or about February 13, 2020. (*Id.* ¶ 9.) This grant of TPS allowed Plaintiff to remain and work in the United States. (*Id.* ¶ 14.)

On the morning of February 13, 2020, Plaintiff drove from his house in Siler City, North Carolina to High Point, North Carolina to pick up his son to carpool to their work site. (*Id.* ¶ 17.) After picking up his son and during the drive to their work site, Plaintiff noticed an unmarked van following his vehicle. (*Id.* ¶ 18.) Plaintiff stayed below the posted speed limit of 35 miles per hour. (*Id.* ¶ 19.) The unmarked van activated its blue lights, which caused Plaintiff to pull over and stop his vehicle. (*Id.* ¶ 20.) Officers, wearing vests with the word "POLICE" but not wearing any type of uniform, exited the van and approached his vehicle, and Plaintiff lowered the window about an inch. (*Id.* ¶ 21.) Platintiff later determined that these were ICE officers. (*Id.* ¶ 34.) About four officers surrounded his vehicle; however, they

---

[1] The Fourth Circuit has explained that when the defendant challenges the factual basis for subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Accordingly, the facts recited herein are derived from the facts alleged in the Complaint and the exhibits submitted by the parties to supplement the Complaint's factual allegations.

*Blanco Ayala v. United States*, 386 F. Supp. 3d 635, 637 n.2 (E.D. Va. 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020).

did not identify themselves to Plaintiff or his son as either police or ICE officers. (*Id.* ¶¶ 22–23.)

One of the ICE officers told Plaintiff in English that there was an issue with his vehicle's license plate and requested that he exit the vehicle. (*Id.* ¶ 24.) Plaintiff speaks limited English, but, with the help of his son, understood that the officer was making statements about irregularities with the vehicle license plate. (*Id.*) Plaintiff did not believe any irregularities existed and stayed in the vehicle. (*Id.*) When Plaintiff asserted there were no irregularities with the license plate, two officers attempted to open the vehicle's doors; however, upon finding the doors locked, the officer on the driver's side asked Plaintiff for his driver's license. (*Id.* ¶ 25.) Plaintiff lowered the driver's side window slightly to provide the ICE officer with his North Carolina driver's license, and the officer immediately reached into the vehicle and tried to grab Plaintiff, causing Plaintiff to drop the driver's license as he pulled away to protect himself. (*Id.* ¶¶ 26–27.)

Officer Brett Borden with ICE and Enforcement and Removal Operations ("ICE/ERO") reviewed records of this incident. (ECF No 9-1 ¶ 2.) Officer Borden instead reports that Plaintiff started to hand over his identification and the officer reached to accept it; however, Plaintiff then rolled the window up, trapping the officer's arm. (*Id.* ¶ 8.) Plaintiff denies pinning the officer's arm in the window. (ECF No. 1 at 1 n.1.) Officer Borden reports that Plaintiff and his son refused to comply with requests and subsequent commands made by multiple officers. (*Id.* ¶ 9.) The officers made commands both in Spanish and English to roll down the window and release the officer's arm. (*Id.*) Officer Borden reports that another officer attempted to break the driver's side window to free the other officer's arm but was not successful. (*Id.*) The officers then broke the passenger side window with a window-punch

3

device. (*Id.*; *see also* ECF No. 1-5 at 4–5 (factual basis in criminal proceeding of Edgar Admir Chicas-Marquez, Plaintiff's son, explaining that Plaintiff rolled up the vehicle window on the ICE officer's arm when the officer attempted to retrieve Plaintiff's identification and "refused to roll down the window").)

According to Plaintiff's Complaint, Plaintiff heard banging on the passenger side door and window, and the officer who had reached into the vehicle ordered Plaintiff to lower the window. (*Id.* ¶ 27.) Either simultaneously or soon thereafter, another officer moved to the passenger side and assisted a third officer in breaking the passenger side window, after which the officers reached into the vehicle and unlocked all the doors. (*Id.*) The officer on the driver's side opened the vehicle's door and grabbed Plaintiff's arm and twisted it, dragged him out of the vehicle, slammed Plaintiff against the vehicle, and handcuffed his wrists behind his back. (*Id.* ¶ 28.) Plaintiff requested a warrant for his arrest, but the ICE officers said they did not need one. (*Id.* ¶ 29.)

The officers searched his vehicle without his consent, and the officer who handcuffed Plaintiff found and examined Plaintiff's driver's license, passport, and wallet in the vehicle. (*Id.* ¶ 30.) Plaintiff's wallet contained his employment authorization document and social security card. (*Id.*) Plaintiff's grant of TPS is evidenced by his employment authorization document, issued by the U.S. Department of Homeland Security. (*Id.* ¶ 15.) According to Plaintiff, this document indicates on its face that it was issued under "Category: A12," which refers to 8 C.F.R. § 274a.12(a)(12). (*Id.*) Plaintiff also holds a valid North Carolina driver's license, which was issued in compliance with the REAL ID Act, Pub. Law 109-13, as evidenced by a U.S. Department of Homeland Security-approved security marking, a star on the upper right-hand corner. (*Id.* ¶ 16 (citing 6 C.F.R. § 37.18(n)).) The back of his driver's

4

license included a restriction indicating "U.S. GOV. LEGAL PRESENCE EXP: 01/04/2021." (*Id.*) The same officer who handcuffed Plaintiff questioned him about the authenticity of his driver's license and employment authorization document. (*Id.* ¶ 31.) Plaintiff responded by indicating that his documents were valid. (*Id.*)

The Complaint further alleges that the ICE officers then chained Plaintiff's waist, hands, and feet, forced him into a van, drove him to a nearby parking lot, and transferred him to a different vehicle. (*Id.* ¶ 33.) According to Plaintiff, the ICE officers did not provide him with any information, verbal or written, explaining why his arrest was justified. (*Id.*) The ICE officers drove him to an office building where they interrogated him and kept him in chains for approximately six to seven hours, without identifying themselves or providing any more information about this arrest or detention. (*Id.* ¶ 34.) Further, according to Plaintiff, it was only after seeing ICE signs and logos in the office building that he knew these officers were employed by the federal government. (*Id.*) While he was still in shackles, ICE officers fingerprinted and photographed Plaintiff, questioned him about his biographical information and immigration history, and falsely accused him of buying a fake driver's license without identifying any reason to believe that his REAL ID Act-compliant license appeared fake. (*Id.* ¶ 35.) During the six to seven hours he was held in the ICE processing office, Plaintiff alleges that he was not allowed to call his spouse, (*id.* ¶ 36); although he was allowed to use the bathroom, he was kept in shackles and under the watch of an ICE officer, (*id.*); and according to Plaintiff he was not provided food, (*id.*).

At approximately 5:45 p.m., ICE officers, including the officer who arrested Plaintiff, transported him in a van, still shackled, until without explanation, he was freed from the

5

Case 1:22-cv-01008-LCB-JLW   Document 12   Filed 03/29/24   Page 5 of 17

shackles and released in Greensboro, about twenty to twenty-five minutes from the location of his original stop where his vehicle was located. (*Id.* ¶ 37.)

The ICE officers returned Plaintiff's phone and his wallet, and the officer who arrested Plaintiff told him that he was "lucky" to be getting away because he had TPS, but that they would deport his son anyway. (*Id.* ¶ 38.)

Plaintiff initiated this action on November 23, 2022. (ECF No. 1.) He asserts the following claims for relief under the FTCA 28 U.S.C. § 1346: false arrest and imprisonment, (First Claim for Relief); assault and battery, (Second Claim for Relief); negligence, (Third Claim for Relief); and intentional infliction of emotional distress, (Fourth Claim for Relief). (*Id.* at 10–14.) Defendant moved on April 6, 2023, to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or in the alternative for summary judgment pursuant to Rule 56. (ECF No. 8.)

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute

6

and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

    B.    **Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway*, 669 F.3d at 452; or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

### III.   DISCUSSION

    A.    **Federal Tort Claims Act**

The United States, as a sovereign entity, is immune from lawsuits unless it consents to being sued. *United States v. Dalm*, 494 U.S. 596, 608 (1990). Under the FTCA, the United States waives sovereign immunity for the negligence of federal employees. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). In particular, the United States may be sued for "personal injury or death" caused by a negligent act or omission, or a wrongful act or omission,

7

of its employee if such act or omission took place within that person's scope of employment and "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place" where the act or omission occurred. 28 U.S.C. § 1346(b)(1). The Supreme Court has observed that reference to the "law of the place" means law of the state in which the negligent or wrongful conduct occurred. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994). It is undisputed that the alleged acts occurred in North Carolina. Thus, North Carolina law governs.

### B. Discretionary Function Exception and Law Enforcement Officer Exemption

The scope of the United States' waiver under the FTCA "is limited by a series of specific exceptions outlined in the Act, each of which is considered jurisdictional." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Medina*, 259 F.3d at 223–24).) Section 2680(a) provides that the Government's waiver of immunity shall not apply to "[a]ny claim based upon an act or omission of an employee of the Government . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*." 28 U.S.C. § 2680(a) (emphasis added). This is the second exception outlined in § 2680(a) and is referred to as the "discretionary function" exception.

To determine whether the discretionary function exception applies, the Court "must first ascertain whether the acts in question are discretionary in nature, such that they involve an element of judgment or choice." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020) (internal quotation marks and citations omitted). Second, the Court must determine whether the challenged governmental actions and decisions were based on considerations of public policy. *Id.*

> When statutes, regulations, or agency guidelines grant discretion to a government agent, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. In conducting this analysis, [the Court] do[es] not inquire whether policy considerations *were actually* contemplated in making a decision. Rather, [the Court] consider[s] only whether the nature of the challenged decision in an objective, or general sense, . . . is one which [the Court] would expect inherently to be grounded in considerations of policy.

*Id.* at 214–15 (internal quotation marks and citations omitted).

Section 2680(h) provides exceptions for certain intentional torts for which the Government does not waive immunity including assault, battery, false imprisonment, and false arrest, which are claims Plaintiff has asserted in this case. (ECF No. 1 at 10–11.) "However, the [FTCA] was amended in 1974 to provide an exception to this exemption, stating that sovereign immunity *is* waived if certain intentional torts . . . are committed by an investigative or law enforcement officer of the United States." *Welch*, 409 F.3d at 651. Therefore, the intentional tort exception does not apply to acts committed by law enforcement officers of the United States. A federal immigration enforcement officer meets the criteria of an "investigative or law enforcement officer." *Id.* (internal quotation marks omitted) (quoting *Medina*, 259 F.3d at 224.) However, the Fourth Circuit has held that "intentional tort claims authorized by § 2680(h) *must* overcome the § 2680(a) [discretionary function] hurdle *before* sovereign immunity can be deemed waived." *Welch*, 409 F.3d at 652 (treating § 2680(a)'s due care and discretionary function exceptions the same) (emphasis added).

Defendant contends that the discretionary-function exception bars Plaintiff's claims because ICE was executing federal duties in an immigration enforcement and removal action targeting Plaintiff's son Edgar Admir Chicas-Marquez. (ECF No. 9 at 8.) The Court will therefore begin its analysis by determining whether the discretionary function exception applies. If applicable and Defendant is entitled to immunity, the Court would lack jurisdiction.

9

The burden is on the plaintiff to establish "that the discretionary function exception does not foreclose [his] claim." *Blanco Ayala*, 982 F.3d at 214 (quoting *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016)).

Defendant argues that the first prong of the discretionary function analysis is satisfied because Plaintiff's claims arise from ICE officers' discretionary decisions to investigate Plaintiff's son, stop Plaintiff's car to execute the warrant on Plaintiff's son, and investigate Plaintiff's immigration status and whether to bring criminal charges based on his conduct during the traffic stop. (ECF No. 9 at 10–11.) Defendant further argues that "[t]he decision to investigate immigration status is based on considerations of public policy, satisfying the second prong of the discretionary function analysis." (*Id.* at 11.)

Plaintiff argues in response that the discretionary function exception does not apply because the ICE officers exceeded their authority and violated federal law and the Constitution. (ECF No. 10 at 6.) Specifically, Plaintiff argues that (1) the ICE officers lacked reasonable suspicion to detain and interrogate Plaintiff about immigration status at the traffic stop; (2) the ICE officers lacked reasonable suspicion to physically detain or probable cause to physically seize and arrest Plaintiff at the traffic stop; (3) the ICE officers' search of Plaintiff's vehicle violated federal law and the Constitution and was not discretionary; and (4) the ICE officers violated federal law and the Constitution when they extended the scope of the stop to interrogate Plaintiff about immigration status and failed to terminate the encounter once provided with evidence of lawful status. (*Id.* at 6–15.)

In *Blanco Ayala v. United States*, the plaintiff who was removed from the United States after Department of Homeland Security officials incorrectly determined that he was ineligible for derivative United States citizenship, brought FTCA claims for assault, battery, false arrest,

10

Case 1:22-cv-01008-LCB-JLW   Document 12   Filed 03/29/24   Page 10 of 17

intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. 386 F. Supp. 3d 635, 639, 644 (E.D. Va. 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020). The district court granted the Government's motion to dismiss, finding that the discretionary exception applied. *Id.* at 637, 644. On appeal, the Fouth Circuit affirmed, holding that the discretionary function exception "plainly" applied to the Department of Homeland Security's decision to arrest, detain, and remove the plaintiff. *Blanco Ayala*, 982 F.3d at 218. The Fourth Circuit reasoned that "whether to investigate a possible violation of immigration law, how to conduct that investigation, and then whether to bring an enforcement action after drawing factual and legal conclusions" are "discretion-laden questions," which cannot be disentangled from each other, and that "decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id.* at 216–17.

Like the plaintiff in *Blanco Ayala*, Plaintiff brings several claims arising out of his encounter with ICE officers, most of which Defendant argues are barred by the discretionary function exception to the FTCA. (ECF No. 9 at 6–20.) The Court will address the applicability of the discretionary function exception to these claims in turn.

Plaintiff brings several intentional tort claims including false arrest and imprisonment[2] pursuant to the FTCA, (ECF No. 1 ¶ 44), arguing that he was not the subject of ICE's enforcement action, he attempted to cooperate, and provided documents to dispel suspicion that he was not lawfully present in the United States, (ECF No. 10 at 15). Plaintiff also brings a claim for assault and battery[3] pursuant to the FTCA because ICE officers allegedly attempted

---

[2] Under North Carolina law, false imprisonment or false arrest is intentional detention of another against that person's will and the detention is unlawful. *Fowler v. Valencourt*, 435 S.E.2d 530, 532 (N.C. 1993) ("False arrest is a form of false imprisonment.").

[3] Under North Carolina law, "[a]n assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." *Dickens v. Puryear*, 276 S.E.2d 325, 330 (N.C. 1981).

11

to grab him through the passenger window while he tried to provide his identification, shattered the passenger window, brutally grabbed him, dragged him out of the vehicle, slammed him against the vehicle, handcuffed his wrists, and chained his hands and feet together for almost seven hours. (ECF No. 1 ¶¶ 54–55.) The statutory language of federal immigration law grants arrest authority to an immigration enforcement officer when he or she "has reason to believe that the alien so arrested is in the United States in violation of" federal law. *Blanco Ayala*, 982 F.3d at 216 (internal quotation marks omitted) (quoting 8 U.S.C. § 1357(a)(2) and citing § 1357(a)(4)). Here, Plaintiff's false arrest and imprisonment and assault and battery claims are based on conduct that is squarely within ICE officers' discretionary decisions to arrest, investigate, and prosecute based on considerations of public policy. *See Blanco Ayala*, 386 F. Supp. 3d at 641 ("[T]he context of applying the discretionary function exception, 'the arrest, detention, and deportation of [a suspected alien] cannot be separated from the agents' investigation' of the suspected alien's citizenship status.). "[T]he very purpose of the discretionary function exception is to prevent judicial 'second-guessing' of administrative decisions grounded in social and political policy. *Medina*, 259 F.3d at 228.

As discussed above, "intentional tort claims authorized by § 2680(h) must overcome the § 2680(a) [discretionary function] hurdle before sovereign immunity can be deemed waived." *Welch*, 409 F.3d at 652. Plaintiff's false arrest and assault and battery claims arise from the fact that an ICE officer arrested him, and his false imprisonment claims arises from the fact that ICE officers detained him. The Fourth Circuit has made clear that "actions underlying intentional tort allegations described in § 2680(h), if authorized and implemented consistent with federal law and the Constitution of the United States, may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable

12

torts under state law." *Medina*, 259 F.3d at 226, 229 (finding that the plaintiff's FTCA claims, including false arrest and assault and battery, against the immigration enforcement agents who arrested him and attempted to have him deported were barred by the discretionary function exception).

Additionally, Plaintiff brings a claim for negligence pursuant to the FTCA, (ECF No. 1 ¶¶ 58–61), asserting that ICE officers, including any supervisory personnel, breached their duty of reasonable care by negligently acting or failing to act in such a way that proximately resulted in Plaintiff's wrongful detention by ICE, which the ICE officers knew or should have known posed a substantial risk of grave harm to Plaintiff, (ECF No. 1 ¶¶ 58–59). Plaintiff argues specifically that there was no need for any investigation because he presented valid documents establishing his legal status. (*See* ECF No. 10 at 10–15.) Plaintiff's argument fails because Congress explicitly provided the discretionary function exception "whether or not the discretion involved be *abused*." 28 U.S.C.A. § 2680(a) (emphasis added). Furthermore, the discretionary function exception protects government decisions "even when made negligently." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017). To the extent Plaintiff alleges negligent training and supervision, (ECF No. 1 ¶ 59), "[c]ourts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions," *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006).

In this case, ICE officers encountered Plaintiff during the execution of an ICE warrant for Plaintiff's son and decided to carry out a traffic stop of Plaintiff's vehicle. Based on Plaintiff's conduct[4] during the traffic stop and the documents he presented, the ICE officers

---

[4] At minimum, Plaintiff did not comply with instructions to exit the vehicle. Alternatively, as Defendant asserts, Plaintiff trapped an ICE officer's arm in the car window. This dispute does not impact the jurisdictional analysis, in light of the undisputed circumstances of the encounter where

13

exercised their discretion and arrested and detained Plaintiff, investigated the validity of Plaintiff's documents, and determined whether to press charges. When ICE declined to press charges, Plaintiff was released, although not to the place where he was arrested. Like in *Blanco Ayala*, the Court finds that the decisions by the ICE officers were discretionary and based on considerations of public policy and therefore satisfy both parts of the discretionary function analysis. Hence, the exception to applies. This Court cannot engage in the judicial second-guessing for which Plaintiff advocates. As courts commonly hold and this Court finds applicable here, "[t]he ultimate decisions of law enforcement officers need not be correct in order to be exempted from the FTCA's waiver of sovereign immunity under the discretionary function exception." *Blanco Ayala*, 982 F.3d at 216. Therefore, the Court finds that the discretionary function exception applies, and that this Court thus lacks subject matter jurisdiction over Plaintiff's claims for false arrest and imprisonment, (First Claim for Relief); assault and battery, (Second Claim for Relief); and negligence, (Third Claim for Relief). Accordingly, Defendant's motion to dismiss pursuant to 12(b)(1) will be granted.

The Court will now address Plaintiff's final claim for intentional infliction of emotional distress, (Fourth Claim for Relief), as neither Party contends that this claim is barred by sovereign immunity.

### C. Defendant's Motion to Dismiss pursuant to 12(b)(6)

#### 1. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff brings a claim for intentional infliction of emotional distress, ("IIED"), pursuant to the FTCA. (ECF No. 1 ¶ 63.) To state a claim for IIED, a plaintiff must allege "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact

---

Plaintiff did not comply with officers' instructions to exit the vehicle or adequately provide identification.

14

cause 3) severe emotional distress." *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992) (quoting *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)). A claim may also exist where the defendant's actions show "a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens*, 276 S.E.2d at 335. Conduct is "extreme and outrageous" when it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Norton v. Scotland Mem'l Hosp.*, 793 S.E.2d 703, 708 (N.C. Ct. App. 2016) (internal quotation marks and citation omitted). "[I]t is not enough that a defendant acts with an intent that is tortious, criminal, or with a degree of aggravation that would entitle a plaintiff to damages for a separate tort." *Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 179 F. Supp. 3d 544, 553 (M.D.N.C. 2016). "The determination of whether the alleged conduct is considered extreme and outrageous is a question of law for the trial judge." *Smith-Price v. Charter Behav. Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004).

North Carolina courts have typically regarded the "extreme and outrageous" element as requiring more than just violence, no matter how severe. *See Hensley v. Suttles*, 167 F. Supp. 3d 753, 768–69 (W.D.N.C. 2016), *aff'd sub nom. Hensley ex rel. North Carolina v. Price*, 876 F.3d 573 (4th Cir. 2017). When the North Carolina Supreme Court addressed the IIED claim in *Dickens*, the court held that the credible threat of future harm, coupled with the violence, satisfied the "extreme and outrageous" element. *Dickens*, 276 S.E.2d at 336. The court in *Hensley* concluded that the "extreme and outrageous" test "is not met simply by considering the brutality of the actions perpetrated by a defendant. The test must also include an assessment of the severity of distress the defendant intended to instill in the victim by way of such actions." *Hensley*, 167 F. Supp. 3d at 768.

15

Defendant argues that Plaintiff has not pled, nor can he show, extreme and outrageous conduct, (ECF No. 9 at 2–3), because Plaintiff makes bare conclusory allegations that ICE's conduct was "extreme and outrageous," (*id.* at 21 (internal quotation marks omitted) (quoting ECF No. 1 ¶¶ 62–72).)

Plaintiff alleges that he was forcefully taken into custody after officers broke the passenger side window of his vehicle while executing an arrest warrant for his son. (ECF No. 1 ¶ 2.) Plaintiff was ultimately released the same day. (*Id.* ¶ 37.) Plaintiff alleges that he was detained for approximately six to seven hours in shackles despite showing valid documents to the ICE officers, (*id.* ¶¶ 2, 64), and when he was released, the ICE officers dropped him off about twenty to twenty-five minutes from the location of his original stop, where his vehicle was located, (*id.* ¶¶ 37, 67).[5]

Plaintiff has not stated a claim for IIED under North Carolina law. Although this Court struggles to see the reason for certain decisions made by the ICE officers, the facts alleged concerning Plaintiff's arrest and detention do not rise to the level of being extreme and outrageous. Nor does Plaintiff adequately allege that the ICE officers intended to cause Plaintiff severe emotional distress, as opposed to determine the validity of his TPS and whether or not to press charges. Thus, Plaintiff fails to state a cognizable IIED claim, and therefore, this claim is dismissed pursuant to Rule 12(b)(6).

---

[5] Although Defendant does not raise this argument, other courts have found that similar IIED claims fell under the discretionary function exception as the claim was found to be based on conduct inextricably intertwined with the outcome of the ICE investigation. *See Tabman v. F.B.I.*, 718 F. Supp. 2d 98, 105 (D.D.C. 2010) ("[P]laintiff's allegations about the deficiencies of the investigation are inextricably intertwined with the outcome of the investigation and the discretionary decision to propose his removal. Plaintiff's claim against the United States for intentional infliction of emotional distress therefore is barred by the discretionary function exception to the FTCA."); *see also Medina v. United States*, 259 F.3d 220, 226, 229 (4th Cir. 2001) (finding that the plaintiffs FTCA claims, including infliction of emotional distress, against the immigration enforcement agents who arrested him and attempted to have him deported were barred by the discretionary function exception)).

16

### D. Alternative Motion for Summary Judgment

Having dismissed all of Plaintiff's claims, the Court find that no issues remain to consider on summary judgment. Defendant's Alternative Motion for Summary Judgment is denied as moot.

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 8), is **GRANTED**.

This, the 29th day of March 2024.

/s/ Loretta C. Biggs
United States District Judge